[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 9, 2012
JOHN LEY
CLERK

_____

No. 11-14040
Non-Argument Calendar

_____

D.C. Docket No. 9:10-cv-80294-WJZ


BEHEEN MOGHADDAM-TRIMBLE,

Plaintiff - Appellant,

versus

SOUTH FLORIDA WATER MANAGEMENT DISTRICT,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 9, 2012)

Before TJOFLAT, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Plaintiff, Beheen Moghaddam-Trimble, a woman proceeding pro se, alleges gender discrimination pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.[1] Defendant, South Florida Water Management District (Management District), moved for summary judgment. The Magistrate recommended granting summary judgment for the Management District, and the district court accepted the Magistrate's Report and Recommendation. The Magistrate found that Moghaddam-Trimble could not establish a prima facie case of gender discrimination because she could not show that male employees in a similar situation were treated more favorably than she. Additionally, the Magistrate found that Moghaddam-Trimble did not establish that the Management District's legitimate nondiscriminatory reason for investigating whether Moghaddam-Trimble sexually harassed Peter Kwiatkowski was pretexual. After reviewing the briefs and the record, we affirm.[2]

## I. Background

Moghaddam-Trimble was a Senior Scientist for the Management District, and she reported directly to Kevin Rodberg. Rodberg reported to Peter

---

[1] The district court dismissed Moghaddam-Trimble's claim of national origin discrimination; therefore only her gender discrimination claim remains.

[2] We construe pro se filings liberally to afford review on any "legally justifiable base." *Sanders v. United States*, 113 F.3d 184, 187 (11th Cir. 1997) (per curiam).

Kwiatkowski, the Division Director for Resource Evaluation/Sub-Regional Modeling. According to Kwiatkowski, Moghaddam-Trimble and Kwiatkowski only interacted on a professional level, but Moghaddam-Trimble claims that they had an intimate relationship. On October 3, 2007, Kwiatkowski filed a sexual harassment complaint against Moghaddam-Trimble. Moghaddam-Trimble claims that Kwiatkowski filed his complaint as retaliation against Moghaddam-Trimble because she ended the relationship between Kwiatkowski and herself. Kwiatkowski views the events that led to his complaint differently.

According to the report prepared by the Management District's EEO Consultant, Tanya Vaughn-Patterson, Kwiatkowski alleged that Moghaddam-Trimble committed several inappropriate actions. Around June 13, 2007, Moghaddam-Trimble approached Kwiatkowski and asked if he wanted to have a sexual relationship with her, which Kwiatkowski refused. Moghaddam-Trimble denies ever asking Kwiatkowski to have a sexual relationship with her. However, on June 15, 2007, Moghaddam-Trimble handed Kwiatkowski a folded note (First Note) then quickly left his office. The First Note states that she wanted to clarify that she wanted more than a just sexual relationship with Kwiatkowski and did not want to "use" him. Moghaddam-Trimble admits that she authored the First Note and gave it to Kwiatkowski.

3

Kwiatkowski further alleged that in late August or early September of 2007, Moghaddam-Trimble came into his office and asked if he ever fantasized about her and lifted her shirt exposing her bare breasts. Moghaddam-Trimble denies this allegation.

On October 3, 2007, Moghaddam-Trimble gave Kwiatkowski the Second Note. The Second Note states that Moghaddam-Trimble thought Kwiatkowski was her "dream man" but was really "an insensitive, selfish, and mean person" who "just pretend[s] to be nice." The note also apologizes for all the trouble Moghaddam-Trimble created for Kwiatkowski and states that Kwiatkowski was a good boss. Moghaddam-Trimble also admits to writing this note and giving it to Kwiatkowski. Kwiatkowski stated in his deposition that he filed the complaint after the Second Note because between the several phone calls he had received from her and the other incidents, he felt that she was not accepting his insistence that he did not want a relationship with her.

On October 8, 2007, the Employee Relations Manager in the Human Resources Solutions Department informed Moghaddam-Trimble of the allegations and that there would be an investigation into Kwiatkowski's claims. Moghaddam-Trimble was also placed on unpaid administrative leave, but was permitted to use annual leave which would be credited back to Moghaddam-Trimble if no

4

wrongdoing was found.  Moghaddam-Trimble agreed to take annual leave.

On October 9, 2007, Vaughn-Patterson interviewed Moghaddam-Trimble. During the interview Vaughn-Patterson kept notes reflecting the conversation with Moghaddam-Trimble.  Moghaddam-Trimble then initialed each of the three pages of notes as accurate.  Moghaddam-Trimble now claims that the notes do not accurately reflect their conversation.

On November 5, 2007, Vaughn-Patterson finished her EEO Report.  The Report found Kwiatkowski to be more credible than Moghaddam-Trimble because Moghaddam-Trimble denied propositioning Kwiatkowski but the First Note leads to the determination that she did proposition Kwiatkowski.  Thus, it is also likely that Kwiatkowski truthfully retold the encounter in which Moghaddam-Trimble lifted her shirt in his presence, even though no one else could corroborate his version of the incident.  Taking into consideration the two notes and the incident in Kwiatkowski's office, Vaughn-Patterson found that Moghaddam-Trimble had violated the Management District's Standards of Conduct and Equal Employment Opportunity and Harassment policies.  This report was then given to Moghaddam-Trimble's Department Director, Marjorie Craig.  Craig would make the ultimate decision as to the type of discipline that Moghaddam-Trimble's actions warranted.

Before making her final decision, Craig permitted Moghaddam-Trimble to

give Craig a written response to the EEO report. Craig reviewed Moghaddam-Trimble's written response, and felt that Moghaddam-Trimble failed to provide any new information that would support reversing the EEO Report's findings. At that point Craig decided that terminating Moghaddam-Trimble would be in the best interest of the Management District, but Moghaddam-Trimble resigned before Craig terminated her employment.

## II. Standard of Review

We review a district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The moving party bears the initial burden of showing the absence of any disputed material fact. *Fickling v. United States*, 507 F.3d 1302, 1304 (11th Cir. 2007) (per curiam). If the moving party meets its burden, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." *Id*. "Speculation does not create a *genuine* issue of fact . . ." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (internal

6

quotation marks omitted).  Likewise, a plaintiff cannot defeat summary judgment by relying upon conclusory assertions.  *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam).

## III. Analysis

Where, as here, the plaintiff relies on circumstantial evidence of discrimination, the case is analyzed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*,  411 U.S. 792, 802–04, 93 S. Ct. 1817, 1824–25 (1973); *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (per curiam).[3]  Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of presenting sufficient evidence of her prima facie case. 411 U.S. at 802, 93 S. Ct. at 1824.  Once the plaintiff shows sufficient evidence of a prima facie case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  *Id*. Then the burden shifts to the plaintiff to show that the reason is pretextual.  *Id*. at 804, 93 S. Ct. at 1825.  In order to show pretext the plaintiff must cast doubt on the defendant's legitimate nondiscriminatory reason "to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not

_____

[3] Title VII and § 1981 have the same requirements of proof and utilize the same analytical framework. *See Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir.1991).

what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks omitted).

Assuming that Moghaddam-Trimble could establish a prima facie case of gender discrimination, she cannot show that the Management District's legitimate nondiscriminatory reason was pretextual. Moghaddam-Trimble claims that the Managment District's decision to investigate her was solely because she was a woman. Furthermore, she argues that the investigation was biased against her because of her gender. Finally Moghaddam-Trimble claims that despite Craig permitting her to resign instead of simply terminating her, Craig's decision to terminate Moghaddam-Trimble's employment was also based on gender.

Even if ultimately found to be untrue, the Management District had a duty to investigate the allegations made by Kwiatkowski. Also, Moghaddam-Trimble has not pointed to anything in the record to show that the Management District did not follow its own policies when investigating Moghaddam-Trimble and when the Management District put her on administrative leave. Furthermore, given the findings of the EEO Report, there is nothing to indicate that the decision tto terminate Moghaddam-Trimble's employment with the Management District, although not carried out, was pretextual. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) (noting that an employer is

not liable for discriminatory conduct if the employer terminates an employee under "the mistaken but honest impression" that the employee violated a policy). Therefore, the district court properly decided that Moghaddam-Trimble did not carry her burden to prove that the Management District's legitimate nondiscriminatory reason was pretextual. We affirm the grant of summary judgment in favor of the Management District.

**AFFIRMED.**